| | | |
|---|---|---|
| Phillip D. Armstrong, Leila R. Armstrong, and Filco Incorporated, | ) ) ) | **ORDER DENYING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND GRANTING PARTIAL SUMMARY JUDGMENT TO DEFENDANTS ON BREACH OF CONTRACT CLAIM AND COUNTERCLAIM** |
| Plaintiffs and Counter Defendants, | ) ) ) ) | |
| vs. | ) ) | |
| | ) | Case No. 4:10-cv-022 |
| Berco Resources, LLC and Encore Acquisition Company d/b/a Encore Operating, LP, | ) ) ) ) | |
| Defendants and Counter Claimants. | ) ) | |

Before the Court are the parties' cross-motions for summary judgment. See Docket Nos. 40 and 46. For the reasons set forth below, the Court denies the Plaintiffs' motion for summary judgment, and denies in part and grants in part the Defendants' motion for summary judgment

## I.     BACKGROUND

The plaintiffs, Phillip D. Armstrong and Leila R. Armstrong, are North Dakota residents. Plaintiff Filco Incorporated is a North Dakota corporation with it principal place of business in North Dakota. Defendant Berco Resources, LLC ("Berco") is a Delaware limited liability company with its principal place of business in Colorado. Defendant Encore Acquisition Company was a Delaware corporation with its principal place of business in Texas until March 9, 2010, when it merged with Denbury Resources Inc. Encore Operating, LP ("Encore Operating"), is a Delaware limited partnership with its principal place of business in Texas. Prior to March 9, 2010, Encore Operating was a subsidiary of Encore Acquisition Company.[1]

---

[1] Upon Encore Acquisition Company's dissolution in 2011, Denbury Onshore, LLC received Encore Operating's interest in the property at issue.

On June 1, 2001, Berco assigned to Phillip D. Armstrong all its right, title, and interest in two oil wells located in McKenzie County, North Dakota. See Docket Nos. 48-4 and 48-6. Armstrong states in his affidavit that the transfer documents, including the Assignment and Bill of Sale, were drafted by Berco. See Docket No. 20-1, p. 2. The subject property is located in the Charlson Field/Charlson Bakken pool and is described as follows:

| Well Name | Legal Description |
|---|---|
| G L Thompson 8-34 | SE1/4 Section 8, Township 153 North, Range 95 West |
| USA Yttredahl 33-43 | NW1/4 Section 34, Township 154 North, Range 95 West |

See Docket No. 48-4. Exhibit "A" to the Assignment and Bill of Sale specified in a footnote that the interest assigned to Armstrong was "limited to the wellbores, associated equipment and production from the Bakken formation found at footage depths between 9,800 feet and 10,350 feet only."[2] See Docket No. 48-6. The Assignment and Bill of Sale contains a reservation which states as follows:

> Assignor expressly reserves and excepts from this conveyance all interests in the associated leasehold, other than the interests in the Bakken formation conveyed hereunder and associated contracts and easements, including the right to develop and/or drill through the Bakken formation to produce oil and gas from other formations.

See Docket No. 48-6, p. 1.

On or about January 1, 2002, Berco assigned to Westport Oil and Gas Company, L.P. all of its remaining right, title, and interest in all oil and gas properties owned by Berco at that time in the Charlson Field, including the subject property. See Docket No. 16-2. Encore Operating is the successor in interest to Westport Oil and Gas Company with respect to the property. Encore Operating operates a horizontal well known as the Charlson 14X-35H, which has a surface location in Section 35, Township 154 North, Range 95 West. This well has tapped the Charlson Bakken pool formation

---

[2] A "wellbore" is defined as "any hole drilled for the purpose of exploration or extraction of natural resources such as water, gas or oil where a well may be produced and a resource is extracted for a protracted period." Wikipedia.com (available at http://en.wikipedia.org/wiki/Wellbore, last visited April 24, 2012).

under Section 34 and is currently producing. The Plaintiffs contend the Charlson 14X-35H well constitutes a trespass and that the value of the oil and gas which has been removed is in excess of $300,000.

The record reveals that in March 2001, Phillip Armstrong contacted a landman that worked with Berco about purchasing an interest in two wells known as Thompson 8-34 and the USA-Yttredahl Bakken 33-43. On March 23, 2001, Armstrong sent a letter to Berco offering to purchase Berco's interest in the two wells. On May 3, 2001, Berco responded with a written counteroffer in a letter which provides as follows:

> **Re:** **Purchase and Sale Agreement**
> **Thompson 8-34**
> **SWSE Sec. 8, 153N-95W**
> **USA Ytterdahl [sic[3]] Bakken #33-43**
> **SWNW Sec. 34, 154N-95W**
> **McKenzie County, North Dakota**

Dear Mr. Armstrong:

Berco Resources, LLC ("Berco") is in receipt of your letter, dated March 23, 2001, offering to purchase the captioned wells for $50,000.00. Be advised that Berco is agreeable to selling Phillip D. Armstrong (Buyer) its captioned wells subject to the following terms and conditions:

1. The effective date shall be June 1, 2001. Closing shall occur on or before May 31, 2001 in Berco's offices at the address depicted below. At Closing, Buyer shall reimburse Seller for oil inventory in the tanks on the effective date, less a reasonable volume adjustment for tank bottoms. Said oil inventory shall be valued at NYMEX settlement pricing for the month of May, less $1.85 per barrel.
2. This transaction will only cover all of Berco's interest in the two wellbores, associated equipment and production from the Bakken formation as described on Exhibit "A".
3. Berco will convey the interests using an Assignment and Bill of Sale form identical to the form attached hereto as Exhibit "B".

---

[3] The parties provide different spellings referring to the same well, including: "Ytterdahl", "Ytteredahl," and "Yttredahl." The Court assumes, without any particular finding, that Yttredahl is the correct spelling.

4.     Berco expressly reserves and excepts all interests in the associated leasehold, contracts and easements including the right to develop and/or drill through the Bakken formation to produce oil and gas from other formations.

5.     Berco expressly reserves and excepts the ownership and access to the Thompson water supply well, associated facilities and applicable easements located in Section 8, 153N-95W.

6.     Buyer will be responsible for properly restoring the surface for the Ytterdahl #33-43 (Minnelusa) that has been plugged and abandoned but not yet reclaimed immediately adjacent to the USA Ytterdahl #33-43 producing from the Bakken.

7.     The sole remedy in the event of default hereunder shall be to compel specific performance of the terms contained herein.

If the terms and conditions contained herein are acceptable to you, please so indicate by signing in the space provided below and faxing or returning one copy of this letter to the undersigned. This offer will remain open until the close of business on May 9, 2001, at which time it will expire.

See Docket No. 48-4 (emphasis in original). The letter references an Exhibit "A" and "B." However, only Exhibit "A" was enclosed and that exhibit provides as follows:

Exhibit "A"

Attached to that certain letter agreement, dated May 3, 2001, by and between Berco Resources, LLC and Phillip D. Armstrong

| Well Name | Working Interest % | Net Revenue Interest % |
|---|---|---|
| GL Thompson 8-34 | 91.6667 | 76.04167* |
| USA Ytteredahl 33-34 [sic[4]] | 100.0000 | 87.5000* |

* limited to the Bakken formation found in both wellbores at footage depths between 9,800' and 10,350' only

See Docket No. 48-4, p. 3. Armstrong signed Berco's letter offer and returned a copy to Berco.

Thereafter, the parties referred to the letter agreement as the "Purchase and Sale Agreement."

---

[4] The parties appear to refer to same Yttredahl well but provide differing numbering, including "33-43" and "33-34." Neither party contends this is anything more than a typo. The Court assumes, without making a particular finding, that the references to "USA Ytteradahl 33-34" in Exhibit "A" of the Purchase and Sale Agreement, and "USA Ytteradahl 33-34" in Exhibit "A" of the Assignment and Bill of Sale, are actually referring to the well known as the "USA Ytteredahl 33-43." See Docket No. 22, p. 11 (title opinion concluding the "33-34" is "obviously incorrect.")

On May 23, 2001, Berco sent the following letter to Armstrong:

**Re:    Purchase and Sale Agreement**
**        Thompson 8-34**
**        SWSE Sec. 8, 153N-95W**
**        USA Ytterdahl** [sic] **Bakken #33-43**
**        SWNW Sec. 34, 154N-95W**
**        McKenzie County, North Dakota**

Dear Mr. Armstrong:

Find enclosed two copies of an executed Assignment and Bill of Sale that will be recorded by Berco in accordance with the term of our Purchase and Sale Agreement, dated May 3, 2001. Please execute and return one copy to the undersigned at your earliest convenience and retain one copy for your records. We will be sending our lease and well data via ground transportation.

Also enclosed is an original and six copies of the NDIC Form 15 transferring the operatorship of the captioned oil and gas wells for your further handling. Please provide us with a copy of the approved document after receipt.

See Docket No. 48-5 (emphasis in original). An "Assignment and Bill of Sale" accompanied the letter, which provides as follows:

Assignment and Bill of Sale

THIS ASSIGNMENT, BILL OF SALE AND CONVEYANCE (the "Assignment"), dated effective as of June 1, 2001, at 12:01 A.M., local time of the assigned property location (the "Effective Date"), is from BERCO RESOURCES, LLC, 1200 Seventeenth Street, Suite 600, Denver, Co 80202 (hereinafter referred to as "ASSIGNOR"), to Phillip D. Armstrong, 12 S. Main St., Minot, North Dakota 58701 (hereinafter referred to as "ASSIGNEE").

For ten dollars ($10.00) and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged by ASSIGNOR, ASSIGNOR hereby assigns, grants, bargains, sells and conveys to ASSIGNEE all of ASSIGNOR's right, title and interest in and to the assets, properties, and production described on Exhibit "A" attached hereto, together with all of ASSIGNOR's right, title and interest in and to all of the real, personal and fixed, movable and immovable property including, without limitation, wells, saltwater trunk lines, easements and right-of way, fixtures, equipment, gas, crude oil, condensate or products in storage or in pipelines [to the extent produced after the Effective Date] and all other fixtures and improvements used in connection therewith (the Right, Title and Interest described by the foregoing paragraph are hereinafter known as the "Interests").

This Assignment and Bill of Sale shall be subject to the provisions of the Purchase and Sale Agreement dated May 3, 2001 between Phillip D. Armstrong and Berco Resources, LLC, the oil and gas lease(s) and to all farmout agreement(s), joint operating agreement(s), and all other valid and subsisting agreements affecting the interest and the leasehold estate where such agreements were executed by ASSIGNOR or its predecessors in title prior to the Effective Date of this Assignment and Bill of Sale. Assignor expressly reserves and excepts from this conveyance all interests in the associated leasehold, other than the interest in the Bakken formation conveyed hereunder and associated contracts and easements, including the right to develop and/or drill through the Bakken formation to produce oil and gas from other formations. Assignor expressly reserves and excepts from this conveyance the ownership and access to the Thompson water supply well, associated facilities and applicable easements located in Section 8, 153N-95W .

See Docket No. 48-6, pp. 1-2. Exhibit "A", as referenced in the Assignment and Bill of Sale, states as follows:

Exhibit "A"

Attached to that certain Assignment and Bill of Sale, dated May 23, 2001, by and between Berco Resources, LLC and Phillip D. Armstrong

| Well Name | Working Interest % | Net Revenue Interest % |
|---|---|---|
| GL Thompson 8-34 | 91.66667 | 76.04167* |
| USA Yttredahl 33-34 [sic] | 100.0000 | 87.5000* |
| Yttredahl 33-34 Minnelusa (unrestored location) | 100.0000 | N/A |

* limited to the wellbores, associated equipment and production from the Bakken formation found at footage depths between 9,800 feet and 10,350 feet only

See Docket No. 48-6, p. 3. Phillip Armstrong signed the Assignment and Bill of Sale and sent one of the copies to Berco.

Berco stated in the May 23, 2001, letter (Docket No. 48-5) that the Assignment and Bill of Sale "will be recorded by Berco in accordance with the term of our Purchase and Sale Agreement, dated

May 3, 2001." However, that recording did not occur. Instead, Armstrong recorded an altered Assignment and Bill of Sale on May 31, 2001, adding the property description of the well to Exhibit "A" without Berco's consent. See Docket No. 48-7.

As described in the preceding paragraphs, Berco conveyed a portion of its interest in the property in question to Armstrong. On or about January 1, 2002, Berco conveyed its remaining interest in the property to Westport Oil and Gas Company. See Docket No. 16. Encore Operating is a successor in interest to Westport Oil and Gas Company.

On or about March 12, 2008, Encore Operating sent a letter offer to acquire a portion of Armstrong's interest in the property. See Docket No. 48-16. The letter provides as follows:

> RE: Letter Offer
> NW/4 - Sec. 34, 154N-95W - Leasehold, as to Bakken formation
> USA-Yttredahl # 33-43 Well, Phillip D. Armstrong, Operator
> McKenzie County, North Dakota
>
> Dear Mr. Armstrong:
>
> Encore Operating, L.P. ("Encore") hereby submits the following non-binding offer to acquire all right, title and interest in an to the USA-Yttredahl # 33-43 (the "Well") and all leasehold interests (the "leases") owned by Phillip D. Armstrong et al ("Armstrong") in the NW/4 - Sec 34, 154N-95W, McKenzie County, North Dakota. Encore's offer is subject to title review, onsite environmental assessment and approval by Encore, the execution of a mutually acceptable purchase and sale agreement, and the following general terms and conditions:
>
> 1) On or before September 1, 2008, Encore will commence or cause to be commenced the drilling and completion of a Bakken well in the upper Three Forks Formation in Section 34-154N-95W, McKenzie County, ND. The well will be drilled on a 640 acres spacing unit.
>
> 2) No later than thirty (30) days prior to Encore's commencement of the location construction for the above well, Armstrong will deliver an Assignment, Conveyance and Bill of Sale for all of his right, title and interest in and to the NW/4 of Sec. 34, 154N-95W, McKenzie County, ND, including a net revenue interest of eighty-seven and a half percent (87.5%), and including the USA Yttredahl Bakken #33-43 well with all equipment and associated interests.

7

3)    Upon receipt of the aforementioned Assignments from Armstrong, Encore will deliver to Armstrong a one percent (1%) overriding royalty interest in the 640 acre spacing unit described in paragraph (1) above. Upon Encore's recoupment of one hundred percent (100%) of all costs incurred to drill, equip and complete the test well, Encore will deliver to Armstrong a seven and one-half percent (7.50%) gross working interest in the 640 acres spacing unit described in paragraph (1) above burdened only by 1/8th royalty.

4)    Encore will drill the test well as a horizontal well through the upper Three Forks Formation as seen in the Petro-Hunt USA 2D-3-1H Well (Sec. 2, 153N-95W).

5)    Armstrong agrees to assume all environmental liability associated with the USA-Yttredahl # 33-44 [sic] Well with the BLM and the NDIC during Armstrong's ownership of such well. Armstrong agrees to allow Encore's engineer to visit the well site for an inspection prior to the date of closing.

6)    Encore agrees to assume all plugging and abandonment liabilities for the well.

7)    If Encore does not exercise its option to drill the subject well before Sept. 1, 2008, this agreement shall be null and void, and all assignments and transfers of operations undertaken pursuant to the agreement shall be undone and the parties shall be restored to their prior existing conditions.

This offer is valid until Encore withdraws such offer at its sole discretion. If this offer is acceptable to you, please sign in the spaces provided below and return to the undersigned as soon as possible by mail and fax (817) 339-0802.

See Docket No. 48-16. On March 12, 2008, Armstrong signed Encore Operating's letter offer.

In May 2008, Encore Operating received a title opinion concerning the ownership of the properties. The title opinion raised questions as to Armstrong's actual ownership interest in the Bakken formation. In September 2008, Encore Operating commenced drilling a well as set forth in the March 12, 2008, letter offer. In October 2008, Encore Operating completed a horizontal well.

On November 4, 2008, Phillip Armstrong sent a letter to Encore Operating with an executed assignment of a portion of his interest in the property as described in the March 12, 2008, letter offer. See Docket No. 48-19. Armstrong requested Encore Operating's assignment of the overriding interest. On November 11, 2008, Encore Operating sent a letter in response which provides as follows:

Phil:

Thank you for your letter dated November 4, 2008.  I have been in the process of trying to draw up an appropriate Assignment of Overriding Royalty Interest into [sic] you, as per our Letter Agreement dated March 12, 2008, but find I cannot do so at this time because I cannot tie the pertinent leases (leasehold) back to your ownership.  I refer you to the Drilling Title Opinion dated May 6, 2008, copy of which I sent to you by my letter dated September 6, 2008.  The title opinion fully discussed those ambiguities and inconsistencies that are present in Assignment and Bill of Sale dated effective June 1, 2001 from Berco Resources, LLC, as Assignor, to Phillip D. Armstrong, as Assignee, recorded at document 3397874, McKenzie County, North Dakota.  Please refer to Comment and Requirement No. 7 of the referenced title opinion.

The ambiguities and inconsistencies discussed at Comment and Requirement No. 7 will need to be cleared up and/or satisfied in order to establish leasehold title into [sic] your ownership.  One of the items the title attorney discusses that might clear up these ambiguities and inconsistencies is that certain Purchase and Sale Agreement dated May 3, 2001 by and between yourself and Berco Resources, LLC.  It is set out at paragraph 3 of the subject Assignment and Bill of Sale.  I request you please send me a copy of this Purchase and Sale Agreement at your earliest convenience.

For your convenience, I have enclosed a copy of the subject Assignment and Bill of Sale dated effective June 1, 2001 from Berco Resources, LLC, as Assignor, to Phillip D. Armstrong, as Assignee.  Please note, there is no discussion of leasehold interest in the grant and there are no leases listed on the Exhibit A of the assignment.  Furthermore, stated on Exhibit A is the following language:

> "* limited to the wellbores, associated equipment and production from the Bakken formation found at footage depths between 9,800 feet and 10,350 feet only"

What was your understanding of what you were buying with the purchase of your interests under the subject Assignment and Bill of Sale?  It appears this assignment could be interpreted as a wellbore (only) assignment - limited to the Bakken production from the described well.

See Docket No. 48-20.  Armstrong attempted to clear up the "ambiguities and inconsistencies" referenced in Encore Operating's letter by contacting Berco and the Federal Bureau of Land Management.  However, Armstrong was not successful in doing so because both Berco and the Federal Bureau of Land Management concluded that Armstrong's purchase and the assignment was a wellbore-only transaction and did not include a leasehold interest.

9

On February 18, 2010, the Plaintiffs initiated an action in state court in McKenzie County. <u>See</u> Docket No. 1-1. On March 19, 2010, the Defendants removed the action to federal court. <u>See</u> Docket No. 1. The Plaintiffs filed an amended complaint on September 2, 2011. <u>See</u> Docket No. 34. The Plaintiffs seek a declaratory judgment quieting title to an interest in the Bakken formation, not limited to the two wellbores. The Plaintiffs also allege in the complaint that Encore Operating breached the March 12, 2008, letter offer, and that Encore Operating trespassed on the Plaintiffs' interest in the properties and has converted oil and gas attributable to the Plaintiffs' interest. <u>See</u> Docket No. 34.

On September 16, 2011, the Defendants filed a joint answer and counterclaim against Armstrong. <u>See</u> Docket No. 37. The Defendants allege that Berco conveyed only an interest in two wellbores to Armstrong, and that Encore Operating did not breach the March 12, 2008, letter offer because a condition precedent, namely a satisfactory title opinion, was not met. The counterclaim alleges that Armstrong improperly added the property description to Exhibit "A" of the Assignment and Bill of Sale prior to recording it, and seeks a declaration that the altered document is null and void. <u>See</u> Docket No. 37, pp. 10-11.

On September 19, 2011, Magistrate Judge Charles S. Miller, Jr., ordered that all dispositive motions be filed no later than January 13, 2012. <u>See</u> Docket No. 35.

On January 13, 2012, the Defendants filed a motion for summary judgment. <u>See</u> Docket No. 40. The Plaintiffs initially failed to respond to the motion. Plaintiffs' counsel later responded and indicated that he was not aware that a response must be filed within 21 days.[5] <u>See</u> Docket No. 45.

On February 13, 2012, the Plaintiffs filed a motion for summary judgment which also served as the Plaintiffs' response to the Defendants' motion for summary judgment. <u>See</u> Docket No. 46. The Plaintiffs' motion was filed a month after the deadline imposed by Judge Miller. On March 6, 2012,

---

[5] D.N.D. Civ. L. R. 7.1(A)(1) was modified effective December 1, 2009 which reduced the response time from 30 to 21 days.

the Defendants filed a reply.  <u>See</u> Docket No. 53.  The Defendants argue the Plaintiffs' untimely response should not be considered, or in the alternative, summary judgment in the Defendants' favor would be appropriate.  On March 8, 2012, the Defendants filed a brief in opposition to the Plaintiffs' motion for summary judgment, contending the motion should not be considered because it was filed a month after the scheduling deadline.  <u>See</u> Docket No. 56, pp. 2-3.  On March 20, 2011, the Plaintiffs filed a reply brief.  <u>See</u> Docket No. 59.  The trial is scheduled to commence on May 16, 2012.


## II.    <u>STANDARD OF REVIEW</u>

Summary judgment is appropriate when the evidence, viewed in a light most favorable to the non-moving party, indicates no genuine issues of material fact exist and the moving party is entitled to judgment as a matter of law.  <u>Davison v. City of Minneapolis, Minn.</u>, 490 F.3d 648, 654 (8th Cir. 2007); Fed. R. Civ. P. 56(a).  Summary judgment is not appropriate if there are factual disputes that may affect the outcome of the case under the applicable substantive law.  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986).  An issue of material fact is genuine if the evidence would allow a reasonable jury to return a verdict for the non-moving party.  <u>Id.</u>


## III.    <u>LEGAL DISCUSSION</u>

### A.    <u>QUIET TITLE CLAIM</u>

The parties have submitted cross motions for summary judgment on the quiet title claim.  The Court is sitting in diversity jurisdiction and the substantive law of North Dakota applies.  The North Dakota Supreme Court has held that although "the primary purpose in construing a deed is to ascertain and effectuate the grantor's intent[,] . . . deeds that convey mineral interests are subject to the general rules governing contract interpretation . . . and we construe contracts to give effect to the parties' mutual intentions.  <u>Gawryluk v. Poynter</u>, 2002 ND 205, ¶ 8, 654 N.W.2d 400 (citing <u>Mueller v.</u>

Stangeland, 340 N.W.2d 450, 452 (N.D. 1983); Minex Res., Inc. v. Morland, 467 N.W.2d 691, 696 (N.D. 1991)).

The contracting parties' intentions must be ascertained from the contract alone, if possible. Gawryluk, 2002 ND 205, ¶ 9 (citing Minex, 467 N.W.2d at 696). The interpretation of a written contract is a question of law, if the parties' intent can be determined from the contract alone. Olander Contracting Co. v. Gail Wachter Invs., 2002 ND 65, ¶ 11, 643 N.W.2d 29 (citing Garofalo v. Saint Joseph's Hosp., 2000 ND 149, ¶ 7, 615 N.W.2d 160). Whether a contract is ambiguous is a question of law. Olander Contracting, 2002 ND 65, ¶ 11 (citing Des Lacs Valley Land Corp. v. Herzig, 2001 ND 17, ¶ 9, 621 N.W.2d 860). A contract is ambiguous when rational arguments can be made for different interpretations of the contract. Gawryluk, 2002 ND 205, ¶ 9 (citing Minex, 467 N.W.2d at 696). Where the contract is ambiguous, extrinsic evidence is admissible and interpreting the parties' intent becomes a question of fact. Olander Contracting, 2002 ND 65, ¶ 11 (citing Garafalo, 2000 ND 149, ¶ 7).

The dispute in this action centers on whether Berco assigned to Armstrong a leasehold interest in the subject property or merely an interest in the two wellbores described above. A wellbore refers to the physical hole made by an oil and gas well. A wellbore assignment is an assignment where rights to a particular wellbore, and not the associated leasehold, are conveyed. See 8 Williams and Meyers, Oil and Gas Law, Manual of Terms 1141 (2009). In contrast, a person can also assign a working interest, royalty interest, or an entire oil and gas lease. A working interest is the operating interest in an oil and gas lease. Id. at 1158. The owner of a working interest has the right to develop the minerals in and under the land. Id. An overriding royalty interest is an interest in oil and gas that have been produced. An overriding royalty interest is free of the expenses of production and gives the owner no right to develop the minerals. Id. As a general rule, both the overriding royalty interest and working

interest are parts of the leasehold estate, whereas a wellbore assignment generally transfers the separate rights to develop a certain wellbore.

Berco's conveyance to Armstrong was executed in two documents: the Purchase and Sale Agreement dated May 3, 2001, <u>and</u> the Assignment and Bill of Sale dated May 23, 2001. Each document refers to the other. <u>See</u> Docket Nos. 48-4 ("Berco will convey the interests using an Assignment and Bill of Sale form identical to the form attached hereto as Exhibit "B".") and 48-6 ("This Assignment and Bill of Sale shall be subject to the provisions of the Purchase and Sale Agreement dated May 3, 2001 between Phillip D. Armstrong and Berco Resources, LLC, . . . ."). Thus, both documents must be read together to aid in determining the parties' intentions. <u>See</u> N.D.C.C. § 9-07-07 ("Several contracts relating to the same matters between the same parties and made as parts of substantially one transaction are to be taken together.").

Both the Purchase and Sale Agreement, and the Assignment and Bill of Sale, contain language concerning the conveyance. The granting language contained in the Purchase and Sale Agreement states that "[t]his transaction will only cover all of Berco's interest in the two wellbores, associated equipment and production from the Bakken formation as described on Exhibit 'A'." <u>See</u> Docket No. 48-4, p. 1. Exhibit "A" of the Purchase and Sale Agreement limits the interest in the conveyance "<u>to the Bakken formation found in both wellbores</u> at footage depths between 9,800' and 10,350' only." <u>See</u> Docket No. 48-4, p. 3 (emphasis added). This language indicates an intention to limit the conveyance to an interest in the two wellbores, the equipment associated with the wellbores, and Bakken production associated with the wellbores. However, the second conveyance document, the Assignment and Bill of Sale, contains different language that creates some ambiguity as to what interest Berco intended to convey to Armstrong and whether the transaction included a leasehold interest.

The Assignment and Bill of Sale states the "ASSIGNOR hereby assigns, grants, bargains, sells and conveys to ASSIGNEE <u>all of ASSIGNOR's right, title and interest in and to the assets, properties, and production described on Exhibit "A" attached hereto</u>[,]" and Exhibit "A" limits the interest "<u>to the wellbores, associated equipment and production from the Bakken formation</u> found at footage depth between 9,800 and 10,350 feet only." <u>See</u> Docket No. 48-6, pp. 1, 3 (emphasis added). The underlined language in Exhibit "A" of the Assignment and Bill of Sale arguably creates some ambiguities because the phrase "limited to the wellbores, associated equipment and production from the Bakken formation" could be interpreted in one of two ways: (1) as conveying an interest in the two wellbores, the equipment associated with the wellbores, and production from the Bakken formation, not necessarily associated with the wellbores; or (2) as conveying an interest in the wellbores, the equipment associated with the wellbores, and production from the Bakken formation associated only with the wellbores. In addition, the assignment states that <u>all</u> of Berco's "right, title and interest in and to the assets, properties, and production" are assigned. This language is also less than clear and concise.

The reservation clause in the Assignment and Bill of Sale also supports a finding of ambiguity concerning the interests the parties intended the agreements to convey. The reservation clause provides:

> Assignor expressly reserves and excepts from this conveyance all interests in the associated leasehold, other than the interest in the Bakken formation conveyed hereunder and associated contracts and easements, including the right to develop and/or drill through the Bakken formation to produce oil and gas from other formations.

<u>See</u> Docket No. 48-6, p. 1. The phrase reserving "all interests in the associated leasehold, other than the interest in the Bakken formation conveyed hereunder," is arguably ambiguous because the clause does not specify that the interest in the Bakken formation is limited solely to the wellbores. Suffice it to say that the language of the two conveyance agreements is far from a model of clarity. The

language of the contracts is far from clear and explicit. In summary, it is not entirely clear whether the instruments operated to transfer a leasehold interest or a mere wellbore interest.

Both parties have offered different and arguably rational interpretations as to the meaning of the conveyance agreements. And both parties have periodically acknowledged the agreements may indeed be ambiguous. See Deposition of Armstrong, exhibit no. 17 ("There may be ambiguities in the assignment."). The title opinion issued in this case also recognized these same ambiguities. See Docket No. 48-22. Many of the interpretations offered by Armstrong raise serious questions as to their validity in light of custom and practice in the oil and gas industry. Nevertheless, the Court finds that an ambiguity exists concerning the conveyance documents and the intention of the parties at the time the agreements were entered into. Specifically, an ambiguity exists as to whether Berco transferred to Armstrong a leasehold interest in the subject property, or merely an interest in the two wellbores. Where an ambiguity exists, extrinsic evidence is admissible, and an interpretation of the intention of the parties becomes a question of fact. Olander Contracting, 2002 ND 65, ¶ 11 (citing Garafalo, 2000 ND 149, ¶ 7).

The Court denies the motions for summary judgment on the quiet title claim because genuine issues of material fact exist concerning the intent of the parties. The bench trial will focus on the intention of the parties at the time the Purchase and Sale Agreement and the Assignment and Bill of Sale were entered into; the custom and usage in the oil and gas industry relative to the agreements and conveyances; and extrinsic evidence related thereto. See Lire, Inc. v. Bob's Pizza Rest., Inc., 541 N.W.2d 432, 434 (N.D. 1995). It is well-established that evidence of custom and usage is admissible to ascertain the intention of the parties to contracts and to aid in the interpretation of contracts. Tong v. Borstad, 231 N.W.2d 795, 799 (N.D. 1975).

## B.    BREACH OF CONTRACT CLAIM

On March 12, 2008, Encore Operating offered to purchase a portion of Armstrong's interest in the property.  See Docket No. 48-16.  The March 12, 2008, letter offer states in part, "Encore's offer is subject to title review, onsite environmental assessment and approval by Encore, the execution of a mutually acceptable purchase and sale agreement, and the following general terms and conditions . . . ."  See Docket No. 48-16.  The Defendants contend the title review was a condition precedent. The Defendants argue that no contract existed between Encore Operating and Armstrong because the title review was not satisfactory.

North Dakota recognizes that a condition precedent may be a prerequisite to the existence of a contract.  Airport Inn Enters., Inc. v. Ramage, 2004 ND 92, ¶ 11, 679 N.W.2d 269 (citing Mattco, Inc. v. Mandan Radio Ass'n, Inc., 224 N.W.2d 822, 825 (N.D. 1974)).  "A condition precedent is one which must be performed or happen before a duty of immediate performance arises on the promise which the condition qualifies."  Id. (quoting Kruger v. Soreide, 246 N.W.2d 764, 769 (N.D. 1976); N.D.C.C. § 9-01-11).  The failure of a condition precedent "is fatal to the existence of an enforceable contract for sale of [real] property."  United Bank of Bismarck v. Trout, 480 N.W.2d 742, 748 (N.D. 1982).

The March 12, 2008, letter offer provides that "Encore's offer is subject to title review[.]" When, as here, "subject" is used as an adjective, a relevant common definition of "subject" is "contingent on or under the influence of some later action."  Merriam-Webster Dictionary online edition (available at http://www.merriam-webster.com/dictionary/subject, last visited April 20, 2012). The Court finds that Encore Operating's offer was "subject to" or contingent on a title review.  The Court further finds that a satisfactory title review was a condition precedent to the formation of a contract.

Encore Operating received a title opinion concerning the ownership of the property in May, 2008. See Docket No. 48-22. The title opinion identified problems with Armstrong's title to the Bakken formation. Correction of the title defects noted in the title opinion was a condition precedent to Encore's performance under the letter agreement. The title opinion in this case was a "Drilling Title Opinion." Drilling title opinions focus "on adequate leasehold coverage, ownership of the leasehold working interest, and defects which affect leasehold coverage." Harris, *Analyzing and Curing Title Opinion Requirements in Oil and Gas Title Opinions or "What's That Fly Doing in My Soup?"*, 31 Rocky Mt. Min. L. Inst. 20, 4 (1985). The document represents the title attorney's opinion as to the validity of leases and defects in leases. Id. When a defect is found in the title review, the title attorney will present comments and requirements in the title opinion. Id. at 10-11.

The attorney who prepared the title opinion noted several aspects of the transfer of the wellbores from Berco to Armstrong that were problematic. Specifically, it was noted that the Assignment and Bill of Sale "neither lists the oil and gas leases covering [the property] nor makes any reference to leasehold interest[,]" and "the only reference to leasehold interest in either the body of the assignment or the attached exhibit is the language quoted above, whereby the assignor *excepts* all interest in the associated leasehold, 'other than the interest in the Bakken formation conveyed hereunder." See Docket No. 48-22, p. 11 (emphasis in original). The title opinion concluded the Assignment and Bill of Sale could be interpreted "to imply that the leasehold interest in the Bakken formation *are* conveyed," but that the language "from Exhibit 'A' [of the Assignment and Bill of Sale] could [also] be interpreted as indicating that this assignment is only a wellbore assignment, *i.e.*, that the assignment is not only limited to production from the Bakken formation, but is further limited to only production from the [wells]." See Docket No. 48-22, p. 11 (emphasis in original). The title

opinion also identified a gap in the title.[6]   In order to clearly establish Armstrong's title to the Bakken formation, the title opinion recommended that Encore Operating: (1) obtain and record an assignment of a leasehold estate from Berco to Armstrong which clearly conveys an interest to the entire Bakken formation, and which is not limited to the wellbores, and (2) submit that assignment, once executed, to the Federal Bureau of Land Management for approval.  See Docket No. 48-22, p. 13.

On November 11, 2008, Encore Operating sent a letter to Phillip Armstrong requesting that he clear up the ambiguities and inconsistencies concerning his title.  See Docket No. 48-20. Armstrong then contacted Berco requesting a clarification of the conveyance in an attempt to remedy the title defects.  Berco's president responded that "Berco's agreement with you was a wellbore assignment only, with Berco specifically reserving the leasehold interest."  See Docket No. 48-21. Armstrong also contacted the Federal Bureau of Land Management to approve the transfer as a lease transfer, or at the very least, remove the references to a wellbore-only assignment in the Bakken formation from Berco. See Docket No. 42-1.  That federal agency declined to do so and concluded the assignment or transfer was a wellbore-only interest and stated that "[w]e cannot accept a transfer as to the fluids in a wellbore in a Federal lease."  See Docket No. 42-3.  Thus, both Berco and the Federal Bureau of Land Management determined that Berco had granted a wellbore-only assignment to Armstrong.  Accordingly, Armstrong was unsuccessful in clearing up any defects in the title.

The Court finds that Encore Operating's March 2008 offer to purchase Armstrong's interest in the property was clearly "subject to title review," a valid condition precedent.  The title opinion concluded there were ambiguities as to Armstrong title to certain property interests in the Bakken

_____

[6] Prior to Berco's conveyance to Armstrong an inadvertent gap in the title occurred.  On or about November 12, 1998, Berco Resources, Incorporated was changed to Berco Resources, LLC.  During the transition, assets owned by the corporation were transferred to the LLC.  However, the property at issue here was unintentionally omitted from the transfer.  See Docket No. 16.

formation. In addition, Berco's president and the Federal Bureau of Land Management concluded that Armstrong possessed only an interest in the two wellbores and nothing more.

The Court finds that, due to the failure of a condition precedent, Encore Operating had no duty to perform under the March 12, 2008, letter offer. See Airport Inn, 2004 ND 92, ¶ 15 (explaining that where a condition precedent fails to materialize, the agreement is not binding on the parties). The Court further finds that with respect to the breach of contract claim, there are no genuine issues of material fact which exist and only a question of law remains. It is clear and undisputed there was a failure of a condition precedent (a satisfactory title opinion) which is fatal to the existence of an enforceable contract. The Court grants the Defendants' motion for summary judgment as to the breach of contract claim. The Court finds as a matter of law that the correction of the title defects noted in the title opinion was a condition precedent to Encore Operating's performance under the March 2008 letter agreement.


**C.      TRESPASS AND CONVERSION CLAIM**

Armstrong alleges the Defendants have committed trespass and converted oil and gas attributable to the property interests in question. As discussed above, genuine issues of material fact exist concerning the Armstrongs' interest in the property. There are factual issues in dispute as to whether the Armstrongs own an interest in the Bakken formation, or simply an interest in the two wellbores. The same genuine issues of material fact which exist as to the quiet title claim also prevent summary judgment on the claims of trespass and conversion  Therefore, summary judgment is denied on these claims.

## D.     DEFENDANTS' COUNTERCLAIM

It is undisputed that Phillip Armstrong recorded a copy of the Assignment and Bill of Sale in McKenzie County, but altered the document by adding the property description of the wells without Berco's knowledge.  See Docket No. 48-7.  The Defendants' counterclaim seeks a declaratory judgment that the recorded and altered Assignment and Bill of Sale is null and void.  The Defendants' have moved for summary judgment on this counterclaim.

The general rule is that "[a]fter execution and delivery of a sealed instrument or deed an alteration has no effect unless there has been a re-execution of the instrument in its altered form."  3B C.J.S. *Alteration of Instruments* § 112 (2012).  North Dakota law dictates that a grantor must generally subscribe to a grant of property and, prior to recording, the grantor must acknowledge the grant before a notary public.  See Johnson v. Hovland, 2011 ND 64, ¶¶ 2, 17, 795 N.W.2d 294 (holding that a modified deed was invalid on its face, where grantee modified the deed and the grantor neither re-signed nor re-acknowledged the modified deed before a notary public); N.D.C.C. § 47-10-01 (real property transferred only "by operation of law or by an instrument in writing, subscribed by the party disposing of the same or by the party's agent thereunto authorized by writing"); N.D.C.C. § 47-19-03(1) (requiring acknowledgment by the individual who executed an instrument before the instrument can be recorded).

It is undisputed that Phillip Armstrong modified the Assignment and Bill of Sale by adding the property description of the wells to Exhibit "A".  It is undisputed that Berco did not have knowledge of the modification prior to the recording of the document.  Berco neither re-executed the modified Assignment and Bill of Sale nor consented to any alteration of the executed document.  Therefore, the modified Assignment and Bill of Sale as recorded by Armstrong in McKenzie County is null and void on its face.  The Court grants the Defendants' motion for summary judgment on the counterclaim.

IV.     **CONCLUSION**

The Court has carefully reviewed the entire record and the relevant case law.  As outlined above, the Court **DENIES IN PART** and **GRANTS IN PART** the Defendants' motion for summary judgment (Docket No. 40).  The Court denies the Defendants' motion for summary judgment on the quiet title, trespass, and conversion claims.  The Court grants the Defendants' motion for summary judgment on the claim for breach of contract and the Defendants' counterclaim.  The Court **DENIES** the Plaintiffs' motion for summary judgment (Docket No. 46).  The trial will address the claims of quiet title, trespass, and conversion.  The trial will also address the intention of the parties at the time the agreements were entered into; the ambiguities or inconsistencies contained in the "Purchase and Sale Agreement" of May 3, 2001, and attached Exhibit "A"; the "Assignment and Bill of Sale" dated May 23, 2001, and attached Exhibit "A"; the custom and usage in the oil and gas industry concerning the agreements; and relevant extrinsic evidence related thereto.

**IT IS SO ORDERED.**

Dated this 27th day of April, 2012.

*/s/ Daniel L. Hovland*
Daniel L. Hovland, District Judge
United States District Court